The next case is Steve Trujillo v. United States of America. Steve Trujillo, Jr. v. United States of America Good afternoon. Good afternoon. It's morning, I think, still. It's still morning? It's still morning. I came from out of state, so my time is all mixed up. May it please the Court, my name is Scott Borg, and I represent the plaintiff appellant Steve Trujillo. This case is about a man who had half his foot amputated because of negligence by a physician assistant. The plaintiff had two physician experts who regularly work with physician assistants to testify about how the standard of care for a physician assistant was violated in this case. But the trial court committed a legal error in ruling that those experts did not satisfy Arizona 12-2604. It was a legal error because the Arizona statutes governing physicians and physician assistants state that a physician assistant must work under the supervision of a physician and can perform only duties delegated by that physician. I don't think there's any doubt, maybe I'm wrong about this, that your experts knew of the standard of care. In other words, the government is not contesting that they didn't know the standard of care for physician assistants. The question is whether the Arizona legislature has made them statutorily unqualified witnesses because of the language in the statute. So help me with the language in the statute. Well, the language, if I may, is somewhat of a strain. It's the Arizona legislature, that's why it's strained. Some of us are more familiar with it. I think Judge Brandeis once called it the inflicity of language. And so the... It talks of the same health profession, and then the case law seems to define health profession to a high degree of particularity. So how do you get around that? Health profession was determined in, I can't remember the case, but determined by whether there was sufficient involvement of the healthcare professional with the particular subject matter. Right. So we have a case where there's a doctor and a nurse, and they say they're in different healthcare professions for purposes of this statute. Why isn't the doctor and the physician's assistant in different healthcare professions? Oh, thank you. That is a good point. Well, in my opinion, I think it's a silly statute, but I'm just trying to figure out how we work with it. The physician assistant is required to work under the supervision of a physician, and the scope of practice for the physician assistant is determined by the supervising physician. There's a number of regulations and parts of the statute that establish a very close relationship between the physician and the physician assistant. Where the nurse could operate independently, I suppose, in many respects. Yes. I think there's a case that says something about, well, one profession is so totally divorced from the nursing profession that there was no way in which they could be deemed to be aligned or dependent on one another. But this statutory scheme is completely different. There are like 14 or 15 different points in which it places the physician assistant under the physician and requires compliance by the physician assistant with a whole retinue of things, including annual reports, keeping the name of a supervising physician on file, and updating that annually. Do you think we should certify this question to the Arizona Supreme Court? I believe that would be appropriate. The Arizona Supreme Court has yet to rule. There's no Arizona case that has decided whether a physician assistant can be testified against by a physician. But physicians are so heavily intertwined with physician assistants that you don't need to do that. They are part and parcel of the same field, and physician assistants are totally dependent on physicians. It is not logical to say that a physician, a qualified physician who has the same experience and training as a physician assistant cannot testify as to the standard of care. Does it make a difference in this case that your two experts weren't supervising physician assistants?  In other words, I could see where the physician assistant under whom, the doctor under whom this physician assistant worked, might be qualified to speak of the standard of care because the physician assistant worked under that person. But these are just two doctors who happen to know about feed and infectious disease. So how do we know they know anything about the standard of care for physician assistants? I know in general physician assistants work under doctors, but... In the briefs it said that the physician assistant, or the physicians in this case work extensively with physician assistants in the same field, in the same area. So as a factual matter, they would be like the doctor who is supposed to be supervising this physician assistant. Yes, but they're in different states, so they can't actually supervise somebody in Arizona. And I take it your poor client lives on the Arizona side of the border? Yeah. If you were in New Mexico, you wouldn't have this problem. Probably not. Mr. Borg, at one point you asked the district court for an extension to disclose rebuttal export reports from, I think, September 22, 2017 to October 6, 2017. So it seems like that would have been a real opportunity, but at no point did you disclose any PA expert witnesses. Had you done that, I don't think you'd be in this position. So can you help me understand why you didn't offer that when you could have? I wasn't sure. I didn't think we could have at that time because the case had been going on for some time, and all the indications were that the judge would not entertain that motion. What did the judge say? I can't recall exactly what the judge said, but you can see from his opinion in this case that he was trying to ram this thing. Well, I don't know that he was trying to ram it. I think the law is pretty structured in Arizona regarding this area, and they give very narrow interpretations of what is considered that area of standard of care, and they are very limited in what they will allow and who they will allow to opine on that. It has to be within that same band of profession and what they consider that profession. So I'm not sure that it was the district court who was ramming this, but it looks like the language of the legislature. But why didn't you hire a PA from the start? We thought we had better than a PA. We had two experts who trained, who worked extensively with PAs. We thought that we were getting a higher level of expertise. But can I get back to Judge McGeeh's question about the record? At some point, you understood that the government was contending that you had to have a PA. Why didn't you get one at that point? It's my recollection that at that point, it was too late. I'm not sure it was, though, and unfortunately, that may create a problem for you. I'm trying to figure out why you thought it was too late, other than . . . You never went back to the judge when the motion was filed? Passed the deadline for identifying experts. Okay. I read it as being that we really couldn't come in with a new expert at that point. Just because the deadline had run? You can't really fault the district judge for not giving you relief that you don't request. You never requested an extension of that deadline? An effort to hire a PA? No, because the deadline went past, and we felt we had two highly qualified experts who are much better than the PA, who was the defendant. So we figured if you get . . . But you asked for an extension to disclose rebuttal expert reports. I think you saw what the landscape was at that point, and it's just interesting to me that you didn't offer a PA at that point. I think you have to look at the chronology. I'm a little bit foggy on . . . But we did consider trying to get a PA. We didn't think it was worthwhile because it was so clearly . . . These two experts were so clearly qualified. And there's ambiguity in the statutes about who can testify in medical malpractice cases. There's no case on point as to a physician assistant. There are numerous cases about nurses. We believe that because there's this intertwining of the physician and physician assistant, and all these statutes say that the physician must do this and must do that, and the physician assistant must have the name annually checked of who the physician is, and must . . . The scope of practice of the physician assistant is set by the physician. Would you like to reserve the balance of your time, Mr. Borg? Sure. Okay. Thank you, Your Honor. Thank you. Thank you. Good morning, Your Honors. I'm Peter Okozunets, representing the United States. The district court got it exactly right for two reasons. The district court correctly construed the statute ARS 12-2604 to require that the standard of care be viewed through the professional perspective of the treater whose care is at issue. And the district court properly exercised its discretion by holding that the two proposed experts here, an infectious disease specialist and a board-certified doctor of podiatry, were not in the same health care profession as this physician assistant. Mr. Okozunets, it seems like this is a unique sort of relationship between the physician and the PA, where one profession is basically dependent on the other's sort of permanent overall supervision. So I'm just curious, why shouldn't there be consideration of an exception being carved out of Section 12-2604 to allow physicians to testify to the standard of care for PAs? Sure, Your Honor, for a few different reasons. First, the Arizona statutes make clear that, unlike in other states, physician assistants are considered their own separate independent professions. So they're not regulated together with doctors under the same statutes and regulations. Instead, Title 32 of the Arizona revised statutes defines health care professionals as those who are licensed pursuant to the individual substantive chapters of that title. And Chapter 25 provides those substantive standards and definitions for physician assistants. They're governed by their own regulatory board. They have separate training and education and licensing and certification requirements. And they are treated as a separate profession. In fact, they're prohibited from holding themselves out as doctors. They can be disciplined for that. They can be criminally prosecuted for operating outside of their scope of practice. I appreciate that. I mean, it seems like the Arizona statutes also require physicians to supervise physician assistants. And I think, for example, a PA is only allowed to provide medical services that are delegated by the supervising physician if the services within the PA skills is within the physician's scope of practice and is supervised by the physician. And, you know, the PA is only allowed to do certain things if the physician allows it. I mean, this includes administering drugs, medical devices, pronouncing death, other diagnostic, therapeutic, and medical services. This just seems unique that then a doctor can't, you know, talk about a standard of care. And I know that physicians is required to accept professional and legal responsibility for all the tasks of the PA. So it just seems that we should maybe look at, and I'm sure perhaps even more specifically the Arizona legislature should look at, but the case is before us right now as to whether or not it's appropriate to uphold the district court's decision that said, no, a doctor can't opine on the standard of care for a physician's assistant. Well, let me try to answer that by looking at the statute that we have to deal with here and the way that the statute has been construed and applied by the Arizona appellate courts. In this case, your honors are bound by authoritative interpretations of the statute by the Arizona Supreme Court and are guided by the principles that can be distilled from the Arizona appellate case law that deals with the statute. There are three principles that all work together to require affirmance here. The first principle is the general intent of the statute. As then Vice Chief Justice Bales recognized in the Baker case, the general intent of the statute is to ensure that the standard of care expert has comparable training and experience as the treater at issue, comparable training and experience. And for a host of reasons, a board-certified podiatrist and an infectious disease specialist do not have the same training and experience or even comparable training and experience as a physician assistant working at a general care sort of walk-in urgent care clinic. See, that's what doesn't make a great deal of sense. Under it seems, and take this hypothetical, if the physician or the medical doctor that was actually supervising this defendant had been prepared to testify that the defendant had not complied with the standard of care, would he be precluded from testifying under the statute? Well, yes, and that gets me to the second theme that can be distilled from the Arizona case law, which is that these traditional notions of familiarity with the standard of care, of experience working with these other care providers, or even of supervising them, being in a supervisory position is not under Arizona law enough. So let's, I want to follow up on Judge Gorilla's point. So let's assume we have a doctor who said, I told the physician assistant to do X and he did Y. And Y is terribly destructive. It hurts patients. That's why I told him to do X. You can't bring a malpractice case against the physician assistant based solely on that doctor's testimony. Once again, under ARS 12-2604, you need to have the expert, the testifying expert needs to have the same or substantially similar professional background. And I assume we don't have a Ray Sipsa case for purposes of this question. Right, right. Now there may be, you know, the physician's testimony is certainly relevant, but is it that sort of expert testimony that is recognized under the statute? So then you'd need a physician's assistant to testify that disobeying the doctor's orders falls below the standard of care? Well, if you're dealing with... Even though the statute subjects the physician assistant to the doctor's orders? So that might be a negligence per se situation, direct violation of the statute. But that's different. That's not what we have here. In a case where you're just trying to assess whether the physician assistant made the right judgment call, while operating as a physician assistant, the statute requires a physician assistant to provide that expert testimony. So in the St. George case, for instance, the OBGYN testified throughout his entire career, he regularly worked with and supervised certified nurse midwives and was familiar with the standard of care. Then Judge Gould in the Arizona Court of Appeals said that's not enough under ARS 12-2604. And in the Cornerstone case... And we know the statute's constitutional, at least under the Arizona Constitution, because the court said so. That's correct, Your Honor. The court did. And in recognizing that, the court also recognized that the statute adds on to or provides additional requirements above and beyond Rule 702, Federal Rule of Evidence, or State Rule of Evidence 702 and common law expert witness requirements. So under those sort of baseline requirements, sure, a supervisor would have knowledge of the standard of care, would be competent to testify, but ARS 12-2604 requires more. It requires practicing in that same professional band. Although here, I mean, I think physicians and PAs are supposed to meet once a week. I mean, it just seems that they have such a close and intertwined relationship that these traditional bands of care, you know, and what is normally expected, it seems to be present here. So, for example, assuming every other fact in this case is identical, except that Lewis is not a PA, he is a podiatrist and a medical doctor, would you object to Polanski's and Watson's expert testimony in that case? If he were a podiatrist treating in the area of podiatry, then certainly another podiatrist would qualify under the statute. So you're not arguing that the standard of care for that exact same procedure is different for a doctor or a podiatrist than for a PA, right? The difference here, Your Honor, is who can testify as to the standard of care. So you're not making a factual-based argument that somehow they didn't know of the standard of care or that the standard of care for the doctor and the podiatrist is different than the – you're making purely a – you're saying, I don't care about that. The statute says this, and they therefore can't use them. Sure, and that's how the statute has been construed over and over again by the Arizona appellate courts, and that is also why every judge who's looked at exactly this scenario, a doctor and a PA, has determined the statute disqualifies the doctor. It seems rather an absurd result, though, given that they are familiar – I mean, super familiar with the standard of care. Well, but they are not familiar necessarily with the standard of care from the perspective of the PA. The PA learns from its – you know, a different training and educational program, a different certification program, a different licensing program, so that what a PA is supposed to do in a particular situation has to be judged by the standards that apply to PAs, by the professional perspective training and experience that applies to PAs. So the general intent of the statute, that like training and experience, control who can testify, really applies here, and it dovetails with the notion that familiarity with the standard of care is not enough under the statute. Supervision under the statute is not enough. Let me just point to the Cornerstone case, which talks about nursing and looks at the nursing statutes. One of the nurses in that case was a licensed practical nurse, and under ARS 32-1601-19, a licensed practical nurse by statute must be supervised by either a physician or a registered nurse. What do you do with Atencio? Atencio – I mean, it's a slip of the penny of a district judge, but – I think Atencio is very helpful here. Cornerstone looks to the Arizona statutory scheme governing the professions, recognizes that nursing is its own profession because nurses are regulated under a separate chapter, Chapter 15. A separate chapter than PAs? PAs have their own Chapter 2, right, by the same token. So under your reasoning, in Atencio, shouldn't the nurse have been disqualified as an expert? So Atencio looks to the access statute, Title 32 – I'm sorry, Title 36, looks to another set of statutory distinctions. I think the common theme there is that whether you look at Title 32 or Title 36, the Arizona statutes draw a clear, hard demarcation between physicians and other professionals. So in Title 36, addressed in Atencio, the court looked at that distinction in the Medicaid access statute, which recognized that nurses and physicians assistants operate one tier of the health care delivery system. Physicians operate at a different tier. Therefore, they're in separate professions. And so could a nurse have testified in this case about the standard of care? Because it appears that part of Atencio appears to be construing 12-2604. I mean, it's not – it says under 12-2604, you're a qualified expert because you're a nurse. So I'll agree that there is some tension there, Your Honor. But if you look overall at the basic principles that can be distilled from the Arizona case law, the general intent of the statute, that you need like or comparable training and experience, that familiarity and supervision are not enough to qualify an expert, and three, from Cornerstone, you get the third principle, which is that you look to the kind of the regulatory structure of how these professions are organized, which also informs the decision. And as we discussed in our brief, Chapter 25 provides this very separate and independent regulatory scheme for PAs. PAs really do perform a different function in the health care system. They help lower the cost of services and help increase patient access to the system, and that's why they were really introduced into the American medical system in the 1960s. That history is traced in the Tennessee Supreme Court case that we cite, the Cox case, and it further explains why PAs really are treated and recognized as an independent profession. And even under the statutes that the plaintiff cites here, PAs are afforded a great degree of autonomy. There doesn't have to be a supervising physician present where they practice, as long as they touch base in some fashion, even by telecommunication once a week. There's no requirement in Arizona that doctors co-sign any specific number of patient charts. PAs, unlike in Arizona, unlike in many other states, are governed by a separate and independent regulatory board. Those distinctions are all set forth in an American Medical Association survey that are cited in the opening brief and that we cite in our answering brief. So there are clear distinctions, and it really would upend settled Arizona case law to recognize that a professional with vastly different training and experience can testify as to the standard of care of the PA here. I mean, one could imagine if that were the rule, then why couldn't a PA testify about the standard of care of an infectious disease specialist or a doctor of podiatry, for that matter? That would really be fundamentally at odds with the way the case law has developed, and as Your Honors pointed out, how it has defined these requirements to a high degree of particularity. So adopting the plaintiff's position would really require rewriting Arizona law, and the district court should be affirmed. Thank you. Thank you. Thank you, Your Honors. None of the cases cited by the government are on point, and they fail to look at in the case . . . Isn't Cherry on point? It's a district court case, but didn't Judge Silver say in that case that you couldn't use a physician to testify about the standard of care of a PA? Well, interestingly, in that case, the government was taking the opposite side as it did in this case. Sometimes they're right, sometimes they're wrong. At least I thought Cherry was this situation. Maybe I'm mistaken. It's a district court ruling. It's not binding on us. Right. I do think they at least have one case that supports their position. Yeah, I think it's the Court of Appeals, actually. The . . . In this case, unlike no other case where a field of nursing or medicine is involved, there's close intertwining of the overseeing profession with the profession being overseen. And that makes all the difference. In Cornerstone, they said you must look at all the statutes and all the evidence about what the standard of care is. And the cases that have been cited by the government involve different issues and do not involve the kind of intense entanglement between PAs and physicians. So I would urge you to look at the different approaches to case management. The PA can only take on duties that are delegated by a supervising physician. And the supervising physician must supervise. The PA must meet with the supervising physician once a week. The scope of practice is set by the supervising physician. PAs are trained by doctors, licensed to work with doctors, directed and overseen by doctors, and they are supervised by doctors. PAs are stated in the statutes to be agents of doctors. They can only take on duties that are delegated by doctors. They must have a written agreement that's updated annually outlining the scope of their practice. They are agents, oh, I already said that, the location of practice for a PA must be authorized by an MD. So in looking at whether the experts can opine about the standard of care, I think you have to look at the overall statutory scheme, not just whether there's a same. Well, I think we understand your argument. You're out of time now, Mr. Moore, so I don't know if there's any last statement you want to make. Well, we ask that the court reverse this decision below, and that you remand for further proceedings consistent with the reversal. Thank you very much, Mr. Cosnett. Thank you very much. Thank you. The case of the Steve Toheo v. United States of America is now submitted. The next case on our docket for this morning is Greg Young Publishing, Incorporated v. Zazzle, Incorporated.
judges: Murguia, Hurwitz, Guirola